

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

NB:LTG:JLG:MRM
F. #2014R01885

*610 Federal Plaza*
*Central Islip, New York 11722*

October 8, 2021

**FILED**
**CLERK**

12:41 pm, Oct 12, 2021

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

<u>TO BE FILED UNDER SEAL</u>

<u>By E-mail</u>

The Honorable Joan M. Azrack
United States District Judge
United States District Court
Eastern District of New York
100 Federal Plaza
Central Islip, NY 11722

      Re:    <u>United States v. Anthony Leto</u>
               <u>Criminal Docket No. 15-591 (JMA)</u>

Dear Judge Azrack:

      The government respectfully submits this letter in connection with the sentencing of defendant Anthony Leto ("Leto" or the "defendant"), presently scheduled for October 27, 2021, to advise the Court of the pertinent facts concerning the substantial assistance he has rendered in the investigation and successful prosecution of other persons. In light of these facts, and assuming that Leto continues to comply with the terms of his cooperation agreement, the government intends to move at sentencing, pursuant to Section 5K1.1 of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") and Title 18, United States Code, Section 3553, to permit the Court, in its discretion, to downwardly depart from the applicable advisory Sentencing Guidelines range in imposing a sentence, and to sentence the defendant in accordance with the factors set forth in Section 5K1.1(a)(1)-(5).

LETO'S CRIMINAL CASE

      Beginning in 2013, this Office, along with the Federal Bureau of Investigation ("FBI"), launched an investigation into the December 14, 2012 assault of a shackled prisoner, Christopher Loeb ("Loeb"), by members of the Suffolk County Police Department ("SCPD"), including Leto himself. This four-year-long investigation uncovered corruption at the highest levels in Suffolk County government, and ultimately led to the convictions of Suffolk County's highest ranking officials: its Chief of Police, James Burke ("Burke"); its sitting District Attorney, Thomas J. Spota ("Spota"), who had served for an unprecedented

15 years in office; and its Chief of Investigations and Government Corruption Bureau Chief, Christopher McPartland ("McPartland").

Despite the immense and incessant pressure brought to bear upon him, and facing certain professional and personal sabotage at the hands of these aforementioned powerful defendants, on October 24, 2015, shortly after being served with a federal grand jury subpoena, Leto, who was then a SCPD Detective, voluntarily met with the government in a proffer session, and began to cooperate. As discussed further herein, Leto proffered credibly and fulsomely on numerous occasions from that point on, disclosing not only his own criminal conduct, but also critical details of the Loeb assault, including Burke's personal participation in it, as well as substantial and previously unknown information concerning the subsequent efforts by Burke, Spota, and McPartland to obstruct the federal investigation into that assault, including tampering with and threatening witnesses like (and including) himself. Just one month later, on November 24, 2015, Leto waived indictment and pleaded guilty, pursuant to a cooperation agreement with this Office, to a single-count felony Information, charging him with participating in a conspiracy to obstruct justice, in violation of 18 U.S.C. § 1512(k).

As this Court is aware, Leto was called as a witness for the government, and testified over the course of two days – specifically, on November 21, 2019 and November 25, 2019 – before Your Honor, in connection with the jury trial of defendants Spota and McPartland, in the matter captioned United States v. Christopher McPartland and Thomas J. Spota, 17-CR-587 (JMA). That trial, which lasted six weeks, ended with a jury convicting both defendants on all charges.[1]

Leto now faces sentencing before this Court. According to the June 22, 2020 Presentence Investigation Report ("PSR"), Leto's total offense level is 18, and his Criminal History Category is I, yielding an advisory Guidelines range of imprisonment of 27 to 33 months. See PSR ¶ 97. The Probation Office has recommended a non-incarceratory sentence of 3 years' probation.

LETO'S ASSISTANCE & ANALYSIS OF SECTION 5K1.1 FACTORS

Without question, Leto has provided substantial assistance to the government in perhaps the most significant federal criminal prosecution of law enforcement and government corruption in the history of this district. As set forth in more detail below, Leto's cooperation was nothing short of outstanding, and worthy of the highest consideration by this Court.

*First*, Leto's cooperation was timely. See U.S.S.G. §5K1.1(a)(5). Indeed, in late October 2015, when Leto was served with a federal grand jury subpoena, he quickly chose to proffer instead, and to cooperate fully with this Office. Leto provided critical, detailed, and

---

[1] Defendant Burke pleaded guilty as charged well in advance of trial, in a separate but related case, captioned United States v. James Burke, 15-CR-627 (JMA). Had he not, Leto would have been a crucial witness in that trial as well.

2

truthful information about the assault of Loeb, and the massive cover-up that ensued. As a participant in the assault himself, and as the person who was tasked with lying under oath in a related state proceeding, he was a uniquely situated witness, and, indeed, was the first to have been signed up as a federal cooperator in this matter. Leto identified who was giving the orders, and how the conspiracy to obstruct justice unfolded. His early cooperation was a critical component supporting the charges levied against Burke; and further, enabled the government to secure the cooperation of one of its most essential witnesses, James Hickey ("Hickey"). Indeed, it was only *after* Leto chose to cooperate that Hickey hired a lawyer and began to meet with the government in proffer sessions. Moreover, Leto's prompt and thorough cooperation very likely contributed to the decision by Burke to plead guilty himself, prior to any hearing or trial. And, as noted above, Leto provided timely and devastating testimony in the trial against Spota and McPartland. In short, Leto's timely cooperation led to the convictions of Burke, Spota, and McPartland.

*Second*, Leto provided the most significant and useful type of assistance there is – he testified in open court at trial. See U.S.S.G. §5K1.1(a)(1). Leto met with the government on countless occasions in preparation for trial. Moreover, he spent hours on the witness stand, detailing the events of the Loeb assault and its aftermath. He was subject to rigorous cross-examination by two skilled defense attorneys, and was forced to describe embarrassing details about both his personal and professional life in a crowded courtroom, filled to the brim with jurors, spectators, members of law enforcement, and the media, who reported on every detail of the trial. Leto's cooperation from the start led to federal charges being brought against the three most powerful men in Suffolk County; and his compelling and honest testimony led to the sweeping convictions of both Spota and McPartland. Additionally, he stood ready and willing to testify against Burke should the need have arisen. Indeed, the nature and extent of Leto's assistance cannot be overstated. See U.S.S.G. §5K1.1(a)(3).

Notably, Leto's cooperation was not without significant risk to himself and to his family. See U.S.S.G. §5K1.1(a)(4). Leto testified that he was well aware of the cost of crossing the vindictive "Administration." He had seen, first hand, what happened to those who did – they were destroyed, both personally and professionally, and were targeted for arrest and prosecution. Nevertheless, Leto made the choice to cooperate, and did so at substantial risk to himself and his family.

*Finally*, Leto has provided truthful, complete, and reliable information at all times, which allowed this Office and the FBI to charge Burke, Spota, and McPartland, and ultimately, to obtain their convictions. See U.S.S.G. §5K1.1(a)(2). Leto's information was detailed, precise, and accurate; and was significantly corroborated by other evidence, including the testimony of other witnesses, like Hickey and Kenneth Bombace. Moreover, Leto's information was vetted in open court, and credited by the jury in reaching their verdict.

In sum, Leto's cooperation was outstanding. He provided critical information at a pivotal moment in the investigation, and consequently, this Court should strongly consider his substantial assistance when fashioning the appropriate sentence for Leto.

3

CONCLUSION

For the reasons set forth above, the government respectfully submits that Leto provided truly significant and exceptionally substantial assistance.

In light of the foregoing, and assuming his continued compliance with the terms of his cooperation agreement, the government intends to move at sentencing, pursuant to Section 5K1.1 of the Sentencing Guidelines and Section 3553 of Title 18, United States Code, to allow the Court, in its discretion, to impose a sentence below the applicable Guidelines range, and to sentence Leto in accordance with the factors set forth in Section 5K1.1(a)(1)-(5) of the Guidelines.

Furthermore, because of the confidential and sensitive nature of certain information disclosed in this letter, the government respectfully requests that it be filed under seal.

Respectfully submitted,

JACQUELYN M. KASULIS
Acting United States Attorney
Eastern District of New York


By:   \_\_/s/  Nicole Boeckmann_____
Nicole Boeckmann
Lara Treinis Gatz
Justina L. Geraci
Michael R. Maffei
Assistant U.S. Attorneys
(631) 715-7855

cc:   Matin Emouna, Esq.  (by email)
      Steven S. Guttman, U.S.P.O.  (by email)

4